**Bruce BARKER, and Joanna Hope Barker, Appellants,**

v.

**Vernon BROWN, Karmalene Brown, General Shopping Centers, Inc. and Pine Hollow Plaza, Ltd., Appellees.**

**No. 09–88–092 CV.**

Court of Appeals of Texas, Beaumont.

May 18, 1989.

Stephen J. Mass, Conroe, for appellants.

Larry L. Foerster, Conroe, for appellees.

## OPINION

BURGESS, Justice.

Bruce and Joanna Barker entered into an agreement and stock pledge with Vernon and Karmalene Brown to form a Texas corporation for the purpose of opening and operating a Mexican food restaurant. The restaurant closed after 22 days of operation, and the Barkers filed suit against the Browns, General Shopping Centers, Inc. (General) and Pinehollow Plaza, Ltd. (Pinehollow) for breach of the agreement and stock pledge. The trial court entered a directed verdict for the defendants at the close of the plaintiffs' case. Plaintiffs appeal, maintaining, in nine points of error, that they raised fact issues on each element of their claims.

An instructed verdict is properly granted at the close of a plaintiff's case if the plaintiff has failed to raise controverted fact issues and the defendant is thereby entitled to judgment as a matter of law. *Shelton v. Swift Motors, Inc.*, 674 S.W.2d 337, 340 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *Watts v. St. Mary's Hall, Inc.*, 662 S.W.2d 55, 59 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). If reasonable minds may differ as to the truth of the controlling facts, a jury issue is present, *Najera v. Great Atl. & Pac. Tea Co.*, 146 Tex. 367, 207 S.W.2d 365, 367 (1948), and an instructed verdict is, thus, improper.

Points of error one, two and three assert that appellants raised a fact issue on (1) whether appellees breached the agreement and stock pledge, (2) whether appellees were personally obligated to pay appellant Bruce Barker a salary of $5,000 per month for six months, and (3) whether appellees were obligated to finance the restaurant for at least six months. The contract provided in pertinent part:

3. SIX MONTH OPTION: At the end of six months following the opening of the Mexican restaurant and cantina in Pine Hollow Plaza in Conroe, Texas, a review shall be made of the books and records of the restaurant to determine if the restaurant is at that time operating on a profitable basis.... In the event

that the restaurant is not operating on a profitable basis at that time, [appellees] shall have the right to call upon the escrow agent for the delivery of the assignment of all of [appellant's] stock in Conroe Restaurant, Inc. as well as any and all of the right, title and interest of [appellant] in said restaurant....

4. CAPITAL CONTRIBUTIONS: ... [Appellees] agree to jointly contribute up to Twenty Thousand and No/100 Dollars ($20,000.00) as their capital contribution to the operation of the restaurant.

The contract also provided: "[Appellant] shall receive a guaranteed salary of [$5,000] per month...." and "As soon as possible, the [$5,000] per month will be paid from the gross revenues of the operation of the Mexican restaurant...."

The contract did not obligate appellees to contribute unlimited capital to keep the restaurant open for six months as appellants argue. Instead, appellees were required to contribute up to $20,000 which the undisputed evidence showed they did. In fact, appellees contributed far more than $20,000. The six-month provision dealt with another form of appellant's compensation, i.e., an ownership interest in the restaurant. In addition, appellants argue that "guaranteed salary" means that appellees were to personally guarantee his salary for the six-month period, whether the restaurant was open and he was managing it or not. We disagree. By the plain language of the agreement and read in the proper context, appellant's salary was to be paid from gross revenues of the restaurant and was "guaranteed" because it was not dependent upon the restaurant making a profit, as was his other compensation, i.e., receiving an ownership interest in the business. Points of error one, two and three are, thus, overruled.

■ In point of error nine, appellants assert that the trial court erred in not applying the doctrine of promissory estoppel to the case. The law is well settled that the doctrine of promissory estoppel is not applicable where there exists a legally valid contract between the parties. *Stewart & Stevenson Serv., Inc. v. Enserve, Inc.*, 719 S.W.2d 337, 344 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The validity of the agreement and stock pledge in this case was never brought into issue. Accordingly, the trial court correctly concluded that appellants were not entitled to recover under a theory of promissory estoppel as a matter of law. Point of error nine is overruled.

■ In point of error eight, appellants assert that a directed verdict was improperly granted because it produced some evidence that General Shopping Center, Inc. and Pinehollow Plaza, Ltd. were obligated to appellants under the agreement and stock pledge. The contract unambiguously states, "THIS AGREEMENT ... is by and between Bruce D. Barker [appellant] ... and Vernon D. Brown and Karmalene K. Brown [appellees]...." They signed in their individual capacities and not as agents of either entity appellants claim are obligated under the agreement. Point of error eight is accordingly overruled.

In points of error four through six, appellants argue that a directed verdict was not proper since they produced some evidence (1) that appellees interfered with the performance of the agreement and stock pledge, (2) that appellees were negligent in assisting appellants in the formation and operation of the restaurant, and (3) that appellees acted "with willful, wanton and malicious conduct and in bad faith against appellants." Appellants contend that appellees wrongfully failed to finance any advertising for the restaurant or a grand opening. These contentions, however, fail as a matter of law.

■ A defendant's breach of his own contract with a plaintiff is not a basis for the tort of interference with contractual rights. *See Gulf Atl. Life Ins. Co. v. Hurlbut*, 696 S.W.2d 83, 101 (Tex.App.—Dallas 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex.1987). His proper recourse is an action for breach of contract. Point of error four is overruled. In addition, an action in tort for negligence cannot be maintained unless a defendant's conduct constituted the breach of a duty imposed by law, apart from it being an obligation

created by agreement of the parties, either express or implied. *Rodriguez v. Dipp,* 546 S.W.2d 655, 658 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). Appellants have failed to point out what duty, aside from any contractual obligation, appellees were under to approve the advertising and grand opening plans proferred by appellants. Point of error five is, thus, overruled. Last, exemplary or punitive damages are not recoverable for breach of contract. In a proper case, punitive damages are recoverable when the action is one in tort, but as a predicate to recovery, the plaintiff must show that he suffered actual damages. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 745 (Tex. 1986). Absent such actual damages in tort in this case, punitive damages were not recoverable. Point of error six is accordingly overruled.

 Appellants argue in point of error seven, that they raised a fact issue on whether appellees interfered with appellants' contract negotiations with Polly's Restaurant. An action for interference with business relations has as its basis a person's right to be free from malicious interference while conducting negotiations which have a reasonable probability of resulting in a contract. *Light v. Transport Ins. Co.,* 469 S.W.2d 433, 439 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). To prove a prima facie case of interference with business relations, a plaintiff must prove that:

(1) there was a reasonable probability that the plaintiff would have entered into a contractual relationship,

(2) defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming plaintiff,

(3) the defendant was not privileged or justified, and

(4) actual harm or damage occurred as a result.

*Levine v. First Nat'l Bank of Eagle Pass,* 706 S.W.2d 749, 751 (Tex.App.—San Antonio), *rev'd on other grounds,* 721 S.W.2d 287 (Tex.1986). Actual malice need not be shown, *i.e.,* ill will, spite, evil motive or purposing the injury of another. Rather, the interfering party must merely have acted unlawfully, intentionally and knowingly, without just cause or excuse. *See Clements v. Withers,* 437 S.W.2d 818, 822 (Tex. 1969); *Light,* 469 S.W.2d at 440.

 Appellant Bruce Barker testified that he started working with Polly's Restaurant in September toward the end that appellants would take over the management of that restaurant. He testified that he had negotiated an agreement with Polly's where he would lease the restaurant for four years with a right of first refusal after that four-year period ran out. Appellant was to manage the restaurant and pay the owner rent. Appellant had actually done quite a bit of work preparing the restaurant for the transition which was to be consummated October 4, 1985, by the signing of the lease. Appellant testified he cleaned the kitchen, posted a sign at Polly's stating the restaurant was under new management, and opened a new account with a local supplier of food. According to appellant, when first approached about the possibility of managing the Mexican restaurant for the Browns, appellant stated he was not interested in another restaurant but was planning to take over Polly's. Vernon Brown contacted Barker October 2 by telephone explaining his proposition for a Mexican food restaurant and asking Barker if he would meet with him next week. According to Barker, he repeatedly refused to meet with Brown, explaining that he had already decided to sign the lease with Polly's in two days. Barker testified that Brown then told him not to sign anything until Brown could fly him to Tennessee to talk with him, which according to Barker he reluctantly agreed to do since Brown had shown such great interest. Barker also testified that he refrained from entering into the contract with Polly's out of reliance on Brown's statements. Barker testified he estimated a $200 per day profit in running Polly's Restaurant.

 To be liable for wrongful interference, a defendant must have committed acts "calculated to cause damage" to a plaintiff's business, without right or justifiable excuse. *C F & I Steel Corp. v. Pete*

*Sublett & Co.*, 623 S.W.2d 709, 713 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). "Interference" does not include as here the bona fide exercise of one's own rights in a transaction. *Id.* at 715. Point of error seven is overruled.

The trial court judgment is affirmed.

AFFIRMED.