**EDWARDS TRANSPORTS, INC. and Tom Nations, Appellants,**

v.

**CIRCLE S TRANSPORTS, INC., Appellee.**

**No. 07–92–0327–CV.**

Court of Appeals of Texas, Amarillo.

May 25, 1993.

Opinion Overruling Motion for Rehearing July 7, 1993.

McCleskey, Harriger, Brazill & Graf, LLP, Jim Hund, Lubbock, for appellants.

Carr, Fouts, Hunt, Craig, Terrill & Wolfe, LLP, Donald M. Hunt, Gary Bellair, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

Edwards Transport, Inc. and Tom Nations, appellants, appeal from a judgment in favor of Circle S Transport, hereinafter Circle S. The judgment arose from a suit against Edwards and Nations claiming tortious interference with Circle S's business relationship with Amoco Production Company.

In six points of error, Edwards and Nations contend that the court erred in its charge to the jury, in not rendering judgment n.o.v., and in failing to grant a new trial. We will overrule the points of error and affirm the judgment.

For sometime prior to 1989 both Circle S and Edwards had a business relationship with Amoco. Both Circle S and Edwards hauled salt water and other fluids from Amoco's oil and gas wells in and around Hockley County. While neither Circle S nor Edwards had a signed contract with Amoco, they were both on Amoco's "approved list" of vendors who were to be contacted when fluid hauling was needed. A Mr. Rumbaugh was Amoco's superintendent in Hockley County.

Beginning in September 1989, Slape, one of Circle S's owners, perceived that Edwards was receiving a disproportionate share of Amoco work. Slape conveyed this to Rumbaugh, and in an effort to garner more work, he presented to Rumbaugh a reduced rate schedule. Slape also met with Mr. Nations, the owner of Edwards, Inc., to share with him Circle S's new rate schedule. Slape was surprised to learn that Nations already knew about Circle S's new rates. Nations concluded Slape read something sinister into his friendship with Rumbaugh. This idea was fueled by Nation's comment that he was aware of Circle S's rate increases. The Slape–Nations meeting by all parties' accounts became quite heated. There is great controversy, however, as to what was said at the meeting.

Nations maintained that Slape accused him and Rumbaugh of having a crooked relationship. Slape also allegedly said he was going to get to the bottom of the deal. Nations also contended Slape offered to sell Circle S to Edwards.

Slape denied accusing Nations and Rumbaugh of illegal or improper activity. He did state he would like to know how Edwards knew so much about his and Amoco's dealings. Slape did recall a discussion of his selling out; but, he stated that Nations offered to buy him out. Needless to say, everyone agreed the Slape–Nations meeting ended on a sour note.

After Slape left his office, Nations called Rumbaugh and informed him of his meeting with Slape. Nations told Rumbaugh that Slape had accused him of illegal or improper dealings with Edwards. Nations also told Rumbaugh that Slape was spreading the word of the improper relationship and had threatened to make trouble. As one might expect, Rumbaugh was irritated. Rumbaugh called Slape and asked him to drop by his office the next day. The Slape–Rumbaugh meeting was not fruitful.

Rumbaugh testified that Slape first denied accusing Rumbaugh of improprieties and called Nations a liar. Rumbaugh testified that Slape later admitted he had made accusations that wrongdoing existed between Rumbaugh and Nations. Rumbaugh and Slape had three or four subsequent meetings without resolving the conflict. Rumbaugh testified Slape threatened to go over Rumbaugh's head and make it hard on him. Word of problems between Rumbaugh and Slape spread to other Amoco employees. One such employee testified that he had heard Slape admit he had messed up big time. An investigation was made by Rumbaugh's superiors and no wrongdoing was proven. As a result of the bad feelings, Circle S received very little business from Amoco.

Slape testified he had in fact had three or four meetings with Rumbaugh subsequent to his meeting with Nations. He denied ever admitting to Rumbaugh that he had accused Rumbaugh and Nations of an improper relationship. Slape consistently denied telling Nations or anyone else that Nations and Rumbaugh had an improper relationship. Slape also denied admitting he had messed up big. He did admit talking to Rumbaugh's supervisor; but, he denied threatening Rumbaugh. Slape testified that his work for Amoco ceased as a result of the hostility created by Nations falsely accusing him of alleging Nations and Rumbaugh had an improper relationship. The trial of the case ultimately degenerated into a swearing match between Slape, Nations, and Rumbaugh, regarding whether or not Slape had made accusations against Nations and Rumbaugh.

Prior to the trial on the merits, the trial judge issued a pre-trial order instructing the parties to prepare proposed jury charges and instructions. Pursuant to the order, Edwards tendered its question, instruction, and definition dealing with its

affirmative defense of justification or excuse. Circle S also presented its proposed questions, instructions and definitions. During trial, it became clear the pivotal question in the case was not whether Nations' conversation with Rumbaugh interfered with Circle S's business relationship with Amoco, but rather whether the interference was justified. All parties agreed the interference was justified if Nations truthfully communicated to Rumbaugh Slape's statements.

At the charge conference, a discussion arose concerning the burden of proof on the question of justification or excuse. Edwards contended Circle S had the burden to disprove the truthfulness of Nations' statements that Slape accused Nations and Rumbaugh of having an improper relationship. Circle S argued and the court concluded that the truthfulness of Nations' statement was an affirmative defense and that Edwards had the burden of proof on its affirmative defense. The court, however, declined to submit the affirmative defense separately. The court instead modified Edwards' requested question and combined it with the charge prepared by Circle S. The affirmative defense was thus placed in the instruction accompanying Circle S's first question.

■ In Edwards' first two points of error, it complains of the court's charge to the jury. In point of error one, Edwards contends the court improperly placed upon it the burden of proving that the alleged interference was not wrongful but rather was justified. The instruction in issue was given in connection with question No. 1 which reads as follows:

Do you find that either Edwards Transports, Inc., or Tom Nations interfered with the business relationship of the Plaintiff and AMOCO PRODUCTION COMPANY?

You are instructed in connection with Question No. 1 that in order to answer "Yes" to either subdivision, you must be satisfied that Tom Nations, either individually or as President of Edwards Transports, Inc., wrongfully interfered with the business relationship between Circle S Transports, Inc., and Amoco Production Company, that said party acted willfully and intentionally, that there was a reasonable probability that Circle S Transports, Inc., would continue to do business with Amoco Production Company, except for such interference, and that such interference prevented Circle S Transports, Inc., from entering into business relationships with Amoco Production Company into which it would have otherwise have entered.

You are further instructed that for the interference to be "wrongful" it must not have been justified or privileged. Such interference would be justified or privileged:

(1) if it is done in a bona fide exercise of that party's own rights; or,

(2) if that party has an equal or superior right in the subject matter to that of the other party.

The Defendants have the burden of proving that the interference, if any, was justified or privileged. (Tr. 24).

Edwards' complaints, as must be all complaints pertaining to a charge, are viewed in light of the record as a whole. The standard of review is abuse of discretion. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245 (Tex.1974).

■ By so framing the question and placing on Edwards the burden of proof on the issue of justification or excuse, the trial judge adopted the rationale of *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In *Sterner*, the Supreme Court re-addressed the question of whether the lack of justification or excuse in an interference with contract case is an element of the plaintiff's cause of action or whether justification or excuse is an affirmative defense. Consistent with many jurisdictions, the Court ruled that the claim of excuse or justification is an affirmative defense because the defendant has not denied the interference but rather seeks to avoid liability. Such defenses are affirmative in nature under Tex.R.Civ.Proc. 94, because they constitute a confession and avoidance. The decision in *Sterner* has been reaffirmed in *Southwestern Bell Tele. Co. v. John*

*Carlo Texas, Inc.,* 843 S.W.2d 470 (Tex. 1992).

■ As noted by Edwards in its brief, the court's application of the *Sterner* doctrine to a noncontractual interference with business relationship case is an extension of *Sterner.* Edwards notes that post *Sterner* decisions by the Houston [14th Dist.], Dallas, Corpus Christi and Beaumont Courts of Appeals have failed to extend the *Sterner* holding to tortious interferences with prospective business relations. *American Medical Int'l., Inc. v. Giurintano,* 821 S.W.2d 331 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Gillum v. Republic Health Corp.,* 778 S.W.2d 558 (Tex.App.—Dallas 1989, no writ); *Exxon Corp. v. Allsup,* 808 S.W.2d 648 (Tex.App.—Corpus Christi 1991, writ denied); *Barker v. Brown,* 772 S.W.2d 507 (Tex.App.—Beaumont 1989, no writ). In each case, the courts continued to cite malice as an element in a plaintiff's petition alleging interference in a prospective business relationship. The question of the burden of proof on justification or excuse was not in issue in any of the cases and none of the cases cite *Sterner,* perhaps because it was not presented for consideration.

In Circle S's appeal, however, the application of the burden of proof on justification is before this Court. Additionally, in Circle S's case, unlike the four cases cited above, the relationship, while not based upon a contract, was based upon an existing, rather than a prospective, relationship. Under Amoco's "Well and Lease Service Master Contract," Circle S had a working relationship with Amoco which bore many similarities to an oral contract at will, similar to *Sterner's* terminable at will employment contract.[1] Under the facts in this case, we find no error in holding that the question of excuse or justification was an affirmative defense.

Edwards had, in fact, in its answer pleaded the affirmative defense of justification.

Edwards offered evidence on this defensive theory and submitted an issue of legal justification to the court. Based on the evidence offered, the pleadings, and the proposed instructions, we find that the burden of proving excuse or justification was properly placed upon Edwards.

Even if, *arguendo,* the plaintiff in a noncontractual interference with business relationship case must prove the interference to be unjustified, *i.e.,* the interference was malicious, we believe the plaintiff sustained the burden. We note that in question no. 3, the court inquired of the jury whether Edwards' actions were done with actual malice. The jury found that Edwards did act with actual malice, *i.e.,* "ill will, spite, evil motive or purposeful injury of another." [2] In our view, the jury's actual malice finding is tantamount to a no justification finding and is equivalent to a finding that Edwards maliciously interfered with Circle S's business relationship with Amoco. When taken as a whole, the charge reveals that the jury twice found that Edwards' actions were not justified. Thus Circle S sustained its burden of proof under either a *Sterner* mandated charge or a pre-*Sterner* charge. Point of error number one is overruled.

■ In point of error number two, arguing in the alternative, Edwards argues that the trial court erred by including Edwards' affirmative defense as a part of Circle S's question no. 1. Edwards contends the trial court's refusal to submit a separate question dealing with excuse or justification denied him a fair submission of his defensive theory. Edwards correctly notes that even though this case was submitted upon broad-form questions pursuant to Tex.R.Civ.P. 277, it was still entitled to a fair submission of its affirmative defenses. *See Exxon Corp. v. Perez,* 842 S.W.2d 629 (Tex.1992).

■ Under Tex.R.Civ.P. 277, a trial court must submit questions controlling

1. While Circle S chose not to allege in its petition interference with a contract, its pleadings do allege an interference with an existing business relationship rather than interference with a prospective business relationship.

2. The "actual malice" definition is more onerous than the malice definition required in an interference with business relationship case.

the disposition of the case, if they are supported by some evidence. *Moore v. Lillebo,* 722 S.W.2d 683 (Tex.1986); *Southwestern Bell Tele. Co. v. Thomas,* 554 S.W.2d 672 (Tex.1977); *Chrysler Corp. v. McMorries,* 657 S.W.2d 858 (Tex.App.—Amarillo 1983, no writ). A controlling issue is one that presents to the jury a complete ground of recovery or defense. *Wright Way Constr. Co. v. Harlingen Mall Co.,* 799 S.W.2d 415 (Tex.App.—Corpus Christi 1990, writ denied). The submission of a broad-form question may encompass both grounds of recovery and defensive theories, provided that the burden of proof is properly placed. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex. 1988).

■■■ A trial court is granted broad discretion in drawing the charge to the jury. The exercise of that discretion should not be disturbed on appeal unless the trial court acted without any reference to any guiding principle. *Tex. Dept. of Human Servs. v. E.B.,* 802 S.W.2d 647 (Tex.1990). In this case, we do not find the court's failure to submit Edward's affirmative defense in a separate question to have been an abuse of discretion. The court availed itself of Rule 277 and included the affirmative defense as a part of Circle S's liability question. The burden of proof in the question was properly placed and the question fairly submitted Edwards' affirmative defense. Point of error two is overruled.

In his final four points of error, Edwards complains of the sufficiency of the evidence to support the jury's finding that it tortiously interfered with Circle S's business relationship with Amoco. In point of error number three, Edwards contends there is no evidence to support the jury's finding of tortious interference with a business relationship, and the court therefore erred in denying its motion for judgment n.o.v.

■■■ The standard of review of a no evidence point requires us to look only to the evidence tending to support the jury's verdict and to disregard all evidence to the contrary. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226 (Tex.1990); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Jones*

*v. Kinder,* 807 S.W.2d 868, 870 (Tex.App.— Amarillo 1991, no writ). We may not overturn the finding if there is more than a scintilla of evidence to support it. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226 (Tex.1990); *Jones v. Kinder,* 807 S.W.2d 868 (Tex.App.—Amarillo 1991, no writ).

■■■ The evidence, viewed most favorably to Circle S, shows that Nations initiated the conversation with Rumbaugh, and Nations told Rumbaugh that Slape had accused him and Rumbaugh of having an "improper relationship." The evidence most favorable to Circle S also supports the verdict in finding this conversation to be an interference with the business relationship between Amoco and Circle S. Edwards contends, however, that the interference was justified because he was merely repeating to Rumbaugh what Slape had said. Slape denied making the accusations and swore that the story told Rumbaugh by Nations was a fabrication designed to turn Rumbaugh against Slape. The jury being free to believe all, part or none of the testimony chose to believe Slape. There is, therefore, evidence to support the jury's verdict and point of error number three is overruled.

In point of error four, Edwards contends the evidence established as a matter of law its legal justification or excuse defense. The court therefore erred in denying its motion for judgment n.o.v.

■■■ In testing Edwards' "as a matter of law" contention, we must first examine evidence supporting the finding, excluding all evidence to the contrary. If no supporting evidence is found, then we must look to the entire record to establish if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690; *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). As noted earlier, there is evidence which supports the jury's finding that Edwards' communications to Rumbaugh were not justified. Therefore, Edwards did not prove his defense as a matter of law. Point of error number four is overruled.

In point of error five, Edwards contends the finding of tortious interference is not supported by factually sufficient evidence. In reviewing a factual insufficiency claim, we consider all of the evidence both in support of and contrary to the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Jones v. Kinder*, 807 S.W.2d 868 (Tex. App.—Amarillo 1991, no writ). The point of error will be sustained only if the evidence supporting the finding is so weak or the answer is so contrary to the overwhelming weight of the evidence, as to be clearly wrong and manifestly unjust. *Id.*

Looking at all the evidence, there is, as we earlier noted, evidence to support the finding of tortious interference. Nations made the telephone call in question and as a direct result thereof Slape's business relationship with Amoco was interfered with. In fact there is no dispute that, absent excuse or justification, Nations' telephone conversation with Rumbaugh and the resulting disagreement between Rumbaugh and Slape was an interference by Edwards in Slape's business relationship with Amoco. Edwards' only contention therefore, is that the finding of the jury against it on the issue of justification is wrong and manifestly unjust. This contention is raised in point of error number six wherein Edwards contends the jury's failure to find justification or excuse for its actions is so against the great weight and preponderance of the evidence as to be unjust and wrong.

The question of the truthfulness of Nations' communication with Rumbaugh was hotly contested. Whether Slape admitted to Rumbaugh that he had accused Edwards of "having an improper relationship" with Rumbaugh was also in dispute. It was also controverted whether Slape made the admission that he "had messed up big time."

Edwards has cited the Restatement (2nd) of Torts § 776B (1977), and numerous Texas and Federal cases which support its right to protect its own business relationship with Amoco by communication of truthful information about Slape to Rumbaugh. With this premise we cannot disagree. Being in agreement on the law, we therefore once again return to the question: Were Nations' representations truthful?

Edwards maintains that Slape's own testimony served to corroborate the essential truth of the facts which Nations communicated to Rumbaugh. Our reading of the record does not find this to be so. We find the testimony of Slape, Nations and Rumbaugh boiled down to the classic "swearing match." The jury resolved the swearing match in favor of Slape. We do not find such resolution to be so weak or contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. The court therefore did not err in failing to grant a new trial. Points of error five and six are overruled.

All points of error having been overruled, the judgment is affirmed.

## ON MOTION FOR REHEARING

In a motion for rehearing, appellants, Edwards Transports, Inc. and Tom Nations, contend that one of the grounds for our overruling of their first point of error is in conflict with the language in a previously uncited prior opinion of this Court, *i.e., Davis v. Lewis*, 487 S.W.2d 411 (Tex.Civ.App.—Amarillo 1972, no writ).

In *Davis*, we held that if a defendant's alleged interference with a contract is justified as a matter of law, a finding of actual malice is irrelevant. We still adhere to that principle of law. Our statement in the foregoing opinion that "the jury's actual malice finding is tantamount to a no justification finding" is overly broad and in error.

In the present case, however, we are not faced with a factual situation similar to *Davis v. Lewis*, wherein we found justification as a matter of law. In resolving appellant's third and fourth points of error, we concluded that he had not proven justification as a matter of law, and we further found that there was evidence to support the jury finding of tortious interference with contract. We further tested the evidence and found it to be sufficient; there-

fore, we overruled points of error five and six.

We further note that our resolution of point of error number one against appellant was not singularly based on our equation of a finding of malice to a finding of no justification. We find point of error number one to have been properly overruled, for we are convinced that the burden of proving justification was properly placed on appellant, and the jury found appellant did not sustain his burden.

Appellant's motion for rehearing is therefore overruled.