

NUMBER 13-06-00088-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

MICHAEL T. JELINEK, M.D. AND
COLUMBIA RIO GRANDE
HEALTHCARE, L.P., D/B/A
RIO GRANDE REGIONAL HOSPITAL,                    Appellants,

v.

FRANCISCO CASAS, ET AL.,                         Appellees.

---

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

Appellant Columbia Rio Grande Healthcare, L.P., d/b/a Rio Grande Regional Hospital (the "Hospital"), appeals from a jury verdict awarding $250,000 in damages to appellees, Francisco Casas and Alfredo DeLeon, Jr., as personal representatives of the estate of Eloisa Casas (collectively referred to as "the Casases"). By three issues, the Hospital asserts that: (1) there was insufficient evidence that the Hospital's negligence proximately caused Eloisa Casas's injury; (2) there was insufficient evidence to support the

jury's award of mental anguish damages; and (3) the trial court erred by not including an unavoidable accident instruction in the jury charge. Appellant Michael Jelinek, M.D., who was non-suited prior to trial, appeals from the trial court's denial of his motion for sanctions and dismissal, claiming that the Casases' expert report failed to contain an adequate statement of causation. We affirm with respect to both appellants.

## I. BACKGROUND

On July 11, 2001, Eloisa Casas was admitted to the Hospital for diagnosis and treatment of abdominal pain and a possible obstruction of the small intestine. Casas, who suffered from metastatic colon cancer, had a 101-degree fever and a mildly elevated white blood cell count, which indicated a possible infection. Accordingly, her surgeon and primary treating physician, Carlos Garcia-Cantu, M.D., requested the assistance of an infectious disease specialist, Dr. Jelinek. To treat the unidentified infection, Dr. Jelinek prescribed Maxipime, a broad-spectrum antibiotic, and Flagyl, an antibiotic designed to treat anaerobic bacteria.

During Casas's hospital stay, her doctors realized that the cancer had perforated her colon, causing leakage of material into her abdominal cavity. The fluid and abscesses generated by the perforation of the colon were determined to be the cause of the obstruction in Casas's small intestine. On July 13, 2001, Casas underwent major surgery to remedy this problem. Dr. Garcia-Cantu performed the surgery, known as a subtotal colectomy, during which the perforated area of the colon was reattached to prevent further leakage. After surgery, Dr. Garcia-Cantu prescribed Maxipime and Flagyl. A culture of the removed abscesses was taken during surgery; the results revealed that Casas was suffering from an E. coli infection.

Maxipime, which is considered an effective treatment for E. coli, was administered to Casas until July 18, 2001, when the prescriptions for both Maxipime and Flagyl expired automatically. However, due to an oversight by the hospital staff, a renewal form for the

medications was not placed with Casas's chart. As a result, neither prescription was renewed. This oversight was not recognized until July 23, 2001, when Dr. Jelinek visited Casas and noticed no record of the medications having been administered. Casas did not receive Maxipime or Flagyl for over four days, from July 18 to July 23. During this time, according to her husband and son, Casas suffered a setback in her condition. Further, Casas's incision site was emitting a foul odor so potent that the hospital staff needed to bring fans into Casas's hospital room in an attempt to dissipate it.

A culture taken on July 21, 2001, from the site of Casas's surgical incision showed the presence of Candida, a fungus. Diflucan, an anti-fungal drug, was prescribed to treat this infection. Another culture of Casas's blood was taken on July 23, which showed the presence of a coagulase-negative Staphylococcus infection. Dr. Jelinek prescribed two antibiotics, Levaquin and Vancomycin, to treat this infection. Neither the July 21 nor the July 23 cultures showed the presence of E. coli. Moreover, it was undisputed that neither Maxipime nor Flagyl would have effectively treated the Candida or Staphylococcus infections.

Casas died on November 12, 2001. On May 30, 2003, Eloisa Casas's husband Francisco, and her son, Alfredo DeLeon, Jr., filed suit against the Hospital, Dr. Garcia, and Dr. Jelinek.[1] The Casases asserted that the defendants' negligence caused Eloisa to "suffer grievous embarrassment and humiliation, as well as excruciating pain the remainder of her life which she would not have suffered to such degree if properly diagnosed, treated and cared for . . . ." The Casases sought damages for Eloisa's injuries and mental

---

[1] The Casases' original petition named Francisco Casas, individually and as the personal representative of Eloisa's estate, as a plaintiff, along with DeLeon, Conception Pacheco, and "All Those Entitled to Recover For The Wrongful Death of Eloisa Casas, Deceased, Under the Texas Wrongful Death Act." The Casases' first amended original petition, filed on July 21, 2004, listed only Francisco, individually and as the personal representative of Eloisa's estate, as a plaintiff. On August 8, 2005, the Casases filed their second amended original petition, which was operative at the time of trial, and which named Francisco and DeLeon as plaintiffs solely in their representative capacities on behalf of Eloisa's estate. *See* TEX. R. CIV. P. 65.

anguish.[2]

The Casases filed an expert report within 180 days of their original petition, pursuant to former article 4590i, section 13.01 of the Texas Medical Liability and Insurance Improvement Act ("MLIIA") (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2006)).[3]  The report, authored by John A. Daller, M.D., stated that Drs. Garcia-Cantu and Jelinek were negligent in failing to recognize that the antibiotics were not being given to Casas, and that this negligence resulted in a prolonged hospital stay and increased pain and suffering experienced by Casas.

On March 9, 2004, Dr. Jelinek filed a "Motion for Sanctions and Dismissal Pursuant to Article 4590i § 13.01," contending that Dr. Daller's report "wholly failed to explain any causal connection between the alleged deviation from the applicable standard of care and [Casas's] alleged injuries."  The trial court denied Dr. Jelinek's motion on November 19, 2004.  Nevertheless, on June 23, 2005, the Casases filed a "Motion for Non-Suit With Prejudice" as to Dr. Jelinek and Dr. Garcia-Cantu, stating that they "no longer desire[d] to prosecute" their suit against those defendants.  The trial court entered an order dismissing the case against Dr. Jelinek and Dr. Garcia-Cantu with prejudice on June 28, 2005.  On March 1, 2006, Dr. Jelinek filed a notice of appeal, challenging the trial court's denial of his motion for sanctions and dismissal.

After a trial on the merits, the jury found that the negligence of the Hospital, Dr. Garcia-Cantu, and Dr. Jelinek proximately caused injury to Eloisa Casas.[4]  The jury further

---

[2] The Casases' original petition also sought damages for Eloisa's wrongful death; however, this claim was dropped in their subsequent amended petitions.  The only active claim at the time of trial was the survival claim for personal injuries to Eloisa.  *See id.*

[3] *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (former TEX. REV. CIV. STAT ANN. art. 4590i, § 13.01), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.  Chapter 74 of the Texas Civil Practice and Remedies Code governs only those health care liability claims commenced on or after September 1, 2003.  *See Olveda v. Sepulveda*, 189 S.W.3d 740, 741 n.1 (Tex. 2006) (O'Neill, J., dissenting).  The parties to this appeal do not dispute the fact that former article 4590i applies here.

[4] Question number one of the jury charge asked:  "Did the negligence, if any, of those named below proximately cause an injury to Eloisa Casas?  Answer 'Yes' or 'No' for each of the following:  a. Rio Grande Regional Hospital[,] b. Dr. Carlos Garcia[,] c. Dr. Michael T. Jelinek, directly, or by his agent or employee Dr. Maria Romero."  The jury responded affirmatively as to each defendant.

found that the negligence was attributable as follows:  90% to the Hospital; 5% to Dr. Garcia-Cantu; and 5% to Dr. Jelinek.  Finally, the jury concluded that $250,000 would fairly and reasonably compensate Eloisa Casas for "pain and mental anguish" caused by the negligence of the Hospital and of Drs. Garcia-Cantu and Jelinek.  Final judgment was rendered on the jury verdict on February 1, 2006.  The Hospital filed a "Motion for New Trial, or in the Alternative, Motion for Remittitur and/or to Modify Judgment" and a motion for judgment notwithstanding the verdict on March 3, 2006, both of which were overruled by operation of law.  *See* TEX. R. CIV. P. 329b(c).  The Hospital filed its notice of appeal on March 3, 2006, and this appeal ensued.[5]

## II. DISCUSSION

### A.  Sufficiency of Causation Evidence

By its first issue, the Hospital claims that there was legally and factually insufficient evidence to support the jury's finding that its negligence proximately caused Casas's injuries.

### 1.      Standard of Review

We will sustain a challenge to the legal sufficiency of evidence only if:  (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).  More than a scintilla of evidence exists, and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence.  *Lee Lewis Constr. Co. v. Harrison*, 70

---

[5] The Casases argued in their appellate brief that the Hospital's motion for new trial and notice of appeal were filed late, and therefore their issues were not preserved for appeal.  *See* TEX. R. CIV. P. 329b(a) (motion for new trial shall be filed within thirty days after the judgment is signed); TEX. R. APP. P. 26.1 (civil notice of appeal must be filed within thirty days after the judgment is signed).  Although the Casases abandoned this contention at oral argument, we note that the Hospital's motion for new trial and notice of appeal were indeed timely filed, because in computing the thirty-day time period, the day of the signing of the judgment is not included.  *See* TEX. R. CIV. P. 4.

S.W.3d 778, 782-83 (Tex. 2001). However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In conducting a legal sufficiency review, we credit evidence supporting the judgment if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827; *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 748 (Tex. App.–Corpus Christi 2006, pet. denied).

In conducting a factual sufficiency review, we do not substitute our judgment for that of the jury; rather, we view all the evidence in a neutral light to determine whether the contested finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Villagomez*, 210 S.W.3d at 749.

## 2. Analysis

A plaintiff must establish two causal nexuses in order to be entitled to recovery: (1) the plaintiff must show that the defendant's conduct caused the event sued upon; and (2) the plaintiff must establish that this event caused the plaintiff to suffer injuries for which compensation in damages should be paid. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Kirkpatrick v. Mem'l Hosp. of Garland*, 862 S.W.2d 762, 772 (Tex. App.–Dallas 1994, pet. denied); *see also Guevara v. Ferrer*, 247 S.W.3d 662, 666 (Tex. 2007). The Hospital concedes that its employees' negligence caused the event sued upon—that is, the failure of Casas to receive Maxipime and Flagyl from July 18, 2001 to July 23, 2001. However, the Hospital contends that there was insufficient evidence to establish that this event caused Casas's injuries. We disagree.

6

Casas's husband and son testified that she suffered a dramatic setback in her condition beginning on the day that she was informed of the Hospital's oversight, and that this deteriorated condition continued until the time of her death. The record also reflects that Casas suffered from depression and anxiety after the Hospital failed to provide her with the prescribed antibiotics. A certain amount of depression and anxiety can certainly be expected in a patient who suffers from metastatic colon cancer and has recently undergone invasive surgery. However, Casas's husband and son testified that she suffered additional pain and mental anguish following the Hospital's oversight. Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition. *Morgan*, 675 S.W.2d at 733 (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970)) (holding that lay testimony could establish causal connection between chemical leak and plaintiff's injuries when plaintiff, who had previously been in good health, began experiencing symptoms such as watery eyes, blurred vision, headaches and swelling of the breathing passages four days after typesetting machine that sat two inches from her face was found to be leaking chemical fumes); *Ins. Co. of N. Am. v. Kneten*, 440 S.W.2d 52 (Tex. 1969). In limited circumstances, the existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence. *Guevara*, 247 S.W.3d at 667. In the instant case, the jury could have found, based on the lay testimony of Casas's husband and son, that her condition deteriorated promptly following the Hospital's failure to provide her with Maxipime and Flagyl for four and a half days. The evidence thus provided a reasonable basis for the jury's finding that Casas suffered additional pain and mental anguish because of that failure. *See id.*; *Morgan*, 675 S.W.2d at 733; *Kneten*, 440 S.W.2d at 54.

Moreover, Dr. Daller testified at trial that additional, undetected bacterial infections

7

could have been present in Casas's incision site which could have been treatable by the prescribed antibiotics. Dr. Daller noted specifically that anaerobic bacteria, which cannot survive without oxygen, would not have been detectable by taking a culture of the incision area, and so a negative finding with respect to such a culture would not be medically significant. Dr. Daller also testified that the putrid odor emanating from the incision site was indicative of such an anaerobic infection. Viewing each piece of circumstantial evidence not in isolation, but in light of all the known circumstances, *see City of Keller*, 168 S.W.3d at 813-14, we find that it was reasonable for the jury to have concluded that an anaerobic infection was present and caused Casas to suffer additional pain and mental anguish.

The Hospital further contends that Dr. Daller's testimony cannot be considered because: (1) Dr. Daller was not competent to render an opinion on the issue of causation; and (2) his testimony amounted to no more than mere speculation. The Hospital is correct that incompetent evidence is legally insufficient to support a judgment, even if admitted without objection. *See id.* at 820. To provide opinion testimony, an expert must be qualified by knowledge, skill, experience, training, or education. *See* TEX. R. EVID. 702. In a medical negligence case, an expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *See Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003) (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). However, this does not mean, for example, that only a neurosurgeon can testify about the cause of death from an injury to the brain, or that an emergency room physician could never so testify. *See Broders*, 924 S.W.2d at 153. Dr. Daller testified that he is an experienced transplant surgeon and that he has a doctorate in pharmacology, a field that includes the study of drug interactions within the body. He testified that he has treated in excess of one hundred patients with intra-abdominal infections such as the one Casas suffered from. Although Dr. Daller does not specialize and is not certified in infectious disease, we

8

conclude that his experience and training qualified him as an expert to testify regarding the cause of Casas's injuries.

The Hospital also claims that, even if Dr. Daller was competent to give expert testimony, the jury could not have based its causation finding on his hypothesis because to do so, "it would have had to infer (1) other bacteria were in fact present; (2) that would cause pain and (3) would have been effectively treated by Maxipime and Flagyl." *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968) ("A vital fact may not be established by piling inference upon inference."). We disagree that the jury engaged in impermissible inference stacking here. Dr. Daller provided competent testimony that the odor emanating from the incision site was indicative of an anaerobic infection, and that such an infection would have been treatable by Maxipime and Flagyl. Dr. Daller also testified that the increased heart rate and fever experienced by Casas after the Hospital's failure to provide her with those medications indicated an increased pain level. The jury may not pile inference upon inference, *see Schlumberger*, 435 S.W.2d at 858, but they are free to believe one witness and disbelieve another. *City of Keller*, 168 S.W.3d at 807. Here, the jury believed Dr. Daller's testimony, and we cannot impose our own opinion to the contrary. *See id.*

We find that the evidence furnished a reasonable basis for the jury to find that the Hospital's actions proximately caused injury to Casas; therefore, more than a scintilla of evidence exists. *See Lee Lewis Constr. Co.*, 70 S.W.3d at 782-83. Further, viewing all the evidence in a neutral light, we cannot say that the jury's finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Accordingly, we conclude that the evidence was legally and factually sufficient to support the jury's finding with respect to causation. The Hospital's first issue is overruled.

9

## B.  Sufficiency of Damages Evidence

By its second issue, the Hospital contends that there was legally and factually insufficient evidence to support the jury's finding of mental pain and distress rising to a legally compensable level.  The Texas Supreme Court has stated:

> The term "mental anguish" implies a relatively high degree of mental pain and distress.  It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these.  It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quoting *Trevino v. Sw. Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.–Corpus Christi 1979, no writ)).  In *Parkway Co.*, the plaintiff sought mental anguish damages arising from flooding caused by the defendant's negligence.  The supreme court found insufficient evidence of mental anguish, citing "[no] direct evidence of the nature, duration, or severity of the [plaintiff's] mental anguish, [and] no circumstantial evidence other than the fact of the flooding itself to support any award of mental anguish."  *Id.* at 445.

The Hospital contends that the same result should obtain here, and in support of its argument points to Dr. Jelinek's deposition testimony, wherein he stated that Casas, upon being informed that she did not receive antibiotics for four and a half days, did not cry or express anger or fear.  However, Casas's son and husband gave conflicting testimony.  DeLeon testified that "she was visibly upset, mad, that the medication, the antibiotics weren't being given to her."  DeLeon testified that the depression his mother suffered from was unusual and out of character for her.  Francisco Casas testified that, when Dr. Jelinek removed the staples from his wife's incision to determine the extent of the infection, she cried out in pain.  Francisco also stated that the odor and the drainage of pus from the incision site caused his wife to worry and feel embarrassed as to the way she looked.  He testified that his wife "would be in tears, and she would always tell me [sic] when was I ever

10

going to get well from this cut. . . . She felt disgusted, mad, because they had forgotten to give her antibiotics. She wasn't the same anymore. She didn't trust the nurses or doctors." Casas's husband and son testified that the putrid odor emanating from the incision site was so strong that it persisted even after the nursing staff had brought in fans to circulate the air in the hospital room.

Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 807. Here, unlike in *Parkway Co.*, the record contains competent evidence indicating that Casas's mental anguish was "more than mere disappointment, anger, resentment or embarrassment." *See Parkway Co.*, 901 S.W.2d at 444. Giving credit to evidence supporting the judgment, and viewing the evidence in a neutral light, we find legally and factually sufficient evidence to support the jury's finding of compensable mental anguish damages. *See City of Keller*, 168 S.W.3d at 827; *Villagomez,* 210 S.W.3d at 748; *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Accordingly, the Hospital's second issue is overruled.

## C. Unavoidable Accident Instruction

By its third issue, the Hospital claims that the trial court erred in not including in the jury charge an instruction regarding the hospital's defense that Casas's injuries were caused by an unavoidable accident.[6]

## 1. Standard of Review

Texas Rule of Civil Procedure 277 requires the trial court to submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. TEX. R. CIV. P. 277. A trial court has greater discretion in submitting instructions and definitions to the jury than it does in submitting questions. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d

---

[6] In response to the Hospital's third issue, Casas argues that, if the trial court had included an unavoidable accident instruction, it would have been an impermissible comment on the weight of the evidence. *See* TEX. R. CIV. P. 277; *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723-24 (Tex. 2003). As discussed herein, however, we need not address this argument as the hospital has failed to show the possibility of reversible error.

468, 470 (Tex. App.–San Antonio 1998, pet. denied); *see Steak & Ale of Tex., Inc. v. Borneman*, 62 S.W.3d 898, 904 (Tex. App.–Fort Worth 2001, no pet.).

When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *See* Tex. R. Civ. P. 277; *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000). Further, for an instruction to be proper, it must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence. *See* Tex. R. Civ. P. 278; *Mandlbauer*, 34 S.W.3d at 912. As long as the charge is legally correct, trial courts are afforded broad discretion, subject to reversal only on a court's abuse of that discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Hagins v. E-Z Mart Stores, Inc.*, 128 S.W.3d 383, 387 (Tex. App.–Texarkana 2004, no pet.).

Even if the trial court abused its discretion, we reverse only where the error in the jury charge is shown to be harmful. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749-50 (Tex. 1980). That is, a jury charge error is reversible only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. Tex. R. App. P. 44.1(a). Moreover, failure to submit an instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct instruction has been requested in writing and tendered by the party complaining of the judgment. Tex. R. Civ. P. 278.

## 2. Analysis

The purpose of an unavoidable accident instruction is to inform the jury that, although the defendant's conduct may have been negligent, it must produce the outcome complained of if the plaintiff is to recover. *See Williams v. Viswanathan*, 64 S.W.3d 624, 629 (Tex. App.–Amarillo 2001, no pet.); *Crawford v. Hope*, 898 S.W.2d 937, 941 (Tex. App.–Amarillo 1995, writ denied). The instruction has been historically used in medical

12

malpractice cases if there is some evidence first presented that the event was caused by some condition other than the negligence of the parties. *Williams*, 64 S.W.3d at 629; *see Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex. 1992); *Crawford*, 898 S.W.2d at 941; *Wisenbarger v. Gonzales Warm Springs Rehabilitation Hosp., Inc.*, 789 S.W.2d 688, 692 (Tex. App.–Corpus Christi 1990, writ denied). However, a defendant is not automatically entitled to an instruction explaining unavoidable accident; rather, evidence must first be presented that the event was caused by some condition other than the negligence of the parties. *Crawford*, 898 S.W.2d at 941.

In the instant case, the Hospital contends that it requested an unavoidable accident instruction to follow the jury instruction on proximate cause. However, the Hospital points to nothing in the record that can be considered a "substantially correct" rendition of such an instruction. *See* TEX. R. CIV. P. 278. At trial, there was a discussion outside the presence of the jury regarding the charge, during which counsel for both parties expressed objections to the trial court's proposed charge. At that time, the following exchange took place between the trial court and counsel for the Hospital:

| [Hospital's counsel]: | Your Honor, also for the record we have proposed in writing – the Defendant Hospital has requested instructions and special issues. The first of which we believe is the ultimate issue in this case that should be decided and that was: Whether by a preponderance of the evidence the Plaintiff has proved that there was an injury to Ms. Casas in the case. |
| --- | --- |
| | Also, they requested instructions on unavoidable accident. And as we have shared with the Court as it is used in medical malpractice cases, and is understood in such as the decision of [*Wisenbarger*], in a medical negligence case where expert testimony establishes that another physical condition or circumstance was the probable cause of the injury, the definition of unavoidable accident must follow the jury instruction on proximate cause. |
| | We have also proferred new and independent |

13

cause and sole proximate cause to the Court for consideration and submission of the Charge. I believe the same have been raised by the evidence of other such events, circumstances and persons who are not Defendants in the case as the proximate cause of the injury to the Plaintiff, and they're presently not in the Charge, and I just respectfully request the Court to make a ruling on the record.

THE COURT: Yes, sir. Those were the same requested instructions and questions that – or definitions that you requested earlier in chambers off the record, right?

[Hospital's counsel]: That's correct.

THE COURT: All of those that were shown to me and that you made a request for are denied.

Although the Hospital alludes to the presence of a written unavoidable accident instruction tendered to the trial court, it does not appear in the record. Because the record does not reflect that a "substantially correct" instruction has been "requested in writing and tendered" by the Hospital, we conclude that any error that may have been committed by the trial court in refusing to submit an avoidable accident instruction is not reversible. *See* TEX. R. CIV. P. 278; *see also* TEX. R. APP. P. 33.1(a). Accordingly, the Hospital's third issue is overruled.

### D. Denial of Jelinek's Motion to Dismiss

By his sole issue, Dr. Jelinek asserts that the trial court erred by denying his motion for sanctions and dismissal under former article 4590i, section 13.01 of the MLIIA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. We disagree.

Medical malpractice plaintiffs must provide each defendant physician and health-care provider an expert report containing the expert's curriculum vitae, and "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and

14

the injury, harm, or damages claimed." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51 (Tex. 2002); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). The expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Bowie Mem'l Hosp.*, 79 S.W.3d at 51. If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in [the MLIIA]." *See id.* at 51-52; *Palacios*, 46 S.W.3d at 878. To constitute a "good faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *see Palacios*, 46 S.W.3d at 879. The report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the three elements that the MLIIA identifies: standard of care, breach, and causal relationship. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. That is, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.*

We review a trial court's order dismissing a claim for failure to comply with the expert report requirement under an abuse of discretion standard. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

15

Dr. Daller's original expert report dated October 30, 2003, stated as follows:

> The standard of care when managing a patient requires vigilance towards the treatments the patient is receiving and confirming that orders specified in the physician order sheets are carried out. Both Dr. Carlos Garcia and Dr. Michael Jelinek by their failure to recognize that the antibiotics were not being administered as ordered committed a breach in the standard of care. This breach in the standard of care represents negligence and, within reasonable medical probability, resulted in a prolonged hospital course and increased pain and suffering being experienced by Ms. Casas.

The report thereby informed Dr. Jelinek of the specific conduct being challenged—i.e., his "failure to recognize that the antibiotics were not being administered"—and it provided a basis for the trial court to conclude that the claims had merit. *See Palacios*, 46 S.W.3d at 879. Moreover, the report included Dr. Daller's opinion that Dr. Jelinek's negligence was causally related to the "increased pain and suffering" experienced by Casas.

Dr. Daller's report included his opinion on the three elements required by the MLIIA: standard of care, breach, and causation. *See id.* at 878. Therefore, we conclude that the report constituted a good faith effort to comply with the expert report requirements of the MLIIA. Accordingly, the trial court did not abuse its discretion in refusing to grant Dr. Jelinek's motion for sanctions and dismissal. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 51-52. Dr. Jelinek's issue is overruled.

### III. Conclusion

We affirm the judgment of the trial court as to both appellants.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 29th day of July, 2008.

16