**Wanda Faye CRAWFORD and Frank Crawford, Appellants,**

v.

**Sherman HOPE, M.D., Appellee.**

**No. 07–94–0312–CV.**

Court of Appeals of Texas, Amarillo.

May 10, 1995.

Rehearing Overruled June 5, 1995.

Law Offices of Brenda J. Norton, Brenda Norton, Law Offices of John Grost, John Grost, El Paso, for appellants.

McCleskey, Harriger, Brazill & Graf, L.L.P., Jim Hund, Lubbock, for appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

The pending case entails, for the most part, a battle of experts and the manifestation that the field of medicine, when placed in the legal arena, is far from an exact science. Frank and Wanda Faye Crawford ask whether the trial court erroneously instructed the jury about unavoidable accident, whether the evidence supported the jury's verdict, and whether the trial court abused its discretion in limiting the scope of a medical expert's testimony during their case in chief. The court answers no and affirms the judgment.

## FACTS

On August 4, 1990, Wanda Faye suffered a generalized tonic-clonic seizure. As a result of which, she fell and struck her head. A subdural hematoma soon developed, which, she argued, caused her to suffer injury to the left side of her body. Though being a victim of complex partial seizures for many years and having ingested Phenobarbital and Mysoline to control same, she attributed her August 4th convulsion to the Appellee, Dr. Sherman Hope. Approximately four days before the attack, Dr. Hope had removed her from the aforementioned barbiturates and placed her on Zarontin. He did so in effort to ameliorate minor seizures, that is, blackouts, which neither the Phenobarbital nor the Mysoline alleviated.

Experts testifying at trial and on behalf of the Crawfords stated that Zarontin had no "efficacy against" the types of seizures she suffered. Rather, the drugs previously taken were the appropriate ones. Moreover, Hope proximately caused the onset of the seizure by abruptly suspending their use, they opined. They further stated that this action constituted negligence, as did his purported failure to disclose the potentially dire effects of his decision to his patient.

Responding, Hope admitted that halting use of the barbiturates could have enhanced the possibility of seizure. Yet, he denied that it caused the one experienced August 4th. Crawford's malady, in his view, resulted from "hyponatremia," a rapid drop in the sodium level of the blood. The loss of sodium emanated from a bout of diarrhea previ-

ously suffered by Crawford. The cause of the diarrhea, however, he did not know, though he believed it could have been a virus.

Another expert concurred with Hope. Dr. Carl Smith, testified that Wanda's brain swelled due to a "disturbance in [her] internal fluid balance." In effect, it became "waterlogged". The condition, known as hyponatremia, occurred when the victim rapidly lost sodium from her blood serum. Reacting to the loss, her body released a hormone which induced the brain to "suck" water into it. The brain then swelled within its cranial confines which may have triggered seizure.

That the foregoing happened to Wanda, according to Smith, was evinced by her complaints of diarrhea shortly before August 4th, a drop in her recorded "serum sodium" level from 132 on July 30th (or "in [Hope's] lab up to 148 at that point in time") to 121 on August 4th, a drop in her recorded "creatinine" level from .09 on July 30th to .04 on August 4th, subsequent rise in her serum sodium after August 4th, and her urine output which was approximately five times more than her fluid intake. What caused the diarrhea, which removed the salt from her body, was unknown, though it could have been a virus. In other words, Smith inferred the sequence of events leading to the seizure but could not determine the initial stimulus of the sequence.

Thus, Smith's opinion was twofold. First, regardless of what caused the seizure, it was not Hope's decision to discontinue Wanda's barbiturates. Second, even had the drugs been continued, neither would have prevented the attack.

The parties eventually completed their presentations, after which the court charged the jury. Included within the charge was a question asking it to decide whether Hope's negligence, if any, proximately caused the injuries in question. Also incorporated were a definition of "proximate cause" and an instruction on "unavoidable accident," to which instruction the Appellants objected. Upon deliberating the evidence and argument, the jurors answered "no" to the foregoing question.

## POINTS OF ERROR ONE AND TWO

In their first two points of error, the Crawfords protest the incorporation of the doctrine of "unavoidable accident" into the charge. It was neither applicable in a medical malpractice case nor warranted by the evidence. Declining their invitation to hue a new path in the land of negligence, we overrule both points.

■ Whether a trial court erred in including or omitting matter from its jury charge depends upon whether it abused its discretion. *Edwards Transp., Inc. v. Circle S Transports, Inc.*, 856 S.W.2d 783, 786 (Tex. App.—Amarillo 1993, no writ). Next, the latter depends upon whether it acted in accordance with guiding principles. *Id.* at 788; *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). In other words, the court considers whether the actions were arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Conduct founded upon misinterpreted or misapplied law falls within the borders of abused discretion. *2300, Inc. v. City of Arlington*, 888 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no writ). So too does conduct lacking in factual basis illustrate error. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d at 226 (Tex.1991) (holding as a relevant consideration in determining abused discretion whether evidence supported the court's decision). Yet, a reviewing court's mere disagreement with a decision otherwise supportable in law and fact is not ground for reversal. *Id.* at 226. With this said, the court turns to the points of error.

■ Point two is addressed first, for the simple reason of its quick disposition. When the standard of review is one of abused discretion, allegations of factual or legal sufficiency are not independent grounds of error. *D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, no writ); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Beaumont Bank, N.A.*

*v. Buller,* 806 S.W.2d at 226. Rather, disputes about the quantity of evidence are subsumed into the test of abused discretion. *Id.* Thus, point two is overruled, to the extent that the Appellants urge it as an independent assignment of error. *D.R. v. J.A.R.,* 894 S.W.2d at 95.

■ Next, under point one, the Crawfords attack the doctrine of "unavoidable accident" as "improper per se in a medical malpractice action." Indeed, it "should not be used *at all* in Texas," they propose. (Emphasis supplied). To adopt such a position would be to ignore precedent.

■ The jurisprudence of negligence has long been established in Texas. Within it one finds the tenet that only those responsible for the malady should be burdened with its cure. *See Carter v. Steere Tank Lines, Inc.,* 835 S.W.2d 176, 185–87 (Tex.App.—Amarillo 1992, writ denied) (dissenting opinions rejecting an attempt to make negligence result oriented). Equally inveterate is the principle that an act, no matter how wrong, may not necessarily be the causative factor of injury. From the foregoing concepts, the element of proximate cause merged. Thus, before one may be held liable for redress it must be shown, among other things, that his negligent act produced the injury in a natural and continuous sequence of events. *See Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 785 (1949) (stating that "the proof must establish causal connection beyond the point of conjecture ... show more than a possibility").

Next, the theory of "unavoidable accident" is one means of reiterating to the fact finders the need for causation. When invoking it, the court informs them that though conduct "may have been negligent in the abstract" it must, nevertheless, produce the outcome of which the party complains. *See J. Edgar & J. Sales Texas Torts and Remedies* § 2.12[2][b] (1991) (discussing the basis of unavoidable accident). More importantly, Texas jurisprudence has long permitted a trial judge to so advise jurors. *Hill v. Winn*

*Dixie Texas, Inc.,* 849 S.W.2d 802, 803 (Tex. 1992); *Rodman Supply Co. v. Jones,* 370 S.W.2d 951, 954 (Tex.Civ.App.—Amarillo 1963, no writ). Additionally, the permission has historically extended to cases of medical negligence. *E.g., Wisenbarger v. Gonzales Warm Springs Rehab. Hosp.,* 789 S.W.2d 688 (Tex.App.—Corpus Christi 1990, writ denied); *Swartout v. Holt,* 272 S.W.2d 756 (Tex.Civ.App.—Waco 1954, writ ref'd n.r.e.); J. Edgar & J. Sales *Texas Torts and Remedies* § 11.04[4]. So, regardless of whether one acted negligently, the courts of Texas will not assess him with liability unless his misfeasance caused the resulting injury. To hold otherwise would be to ignore settled precepts of law.

Yet, Texas courts also recognize that a defendant is not automatically entitled to an instruction explaining unavoidable accident. On the contrary, he must first present evidence that the event was caused by some condition other than the negligence of the parties. *Hill v. Winn Dixie Texas, Inc.,* 849 S.W.2d at 803; *Wisenbarger v. Gonzales Warm Springs Rehab. Hosp.,* 789 S.W.2d at 692; *Rodman Supply Co. v. Jones,* 370 S.W.2d at 954. Until he does so, the court may omit the inferential rebuttal from its charge.

■ Here, Doctors Smith and Hope provided the requisite evidence. As described above, both stated that though Hope may have acted negligently, the drop in sodium with the attendant bloating of Wanda's brain caused the seizure. Furthermore, the agent which kindled the drop was unknown, though indication was that it was a virus. Lastly, neither Phenobarbital nor Mysoline effectively prevented the type of seizure encountered; so, even had Hope continued use of the barbiturates, one could reasonably infer from this testimony, the result would have been the same. Consequently, the testimony of Hope and Smith indicating that a factor distinct from Hope's conduct caused the seizure opened the way for the court to instruct on unavoidable evidence.

Next, that it may have constituted some comment on the evidence, as the Appellants

suggest, is insufficient reason to deny the instruction. "It should not be error to tell the jury what the law recognizes—that some accidents occur without anyone's negligence." *Hill v. Winn Dixie Texas, Inc.,* 849 S.W.2d at 805 (dissent). Indeed, every jury instruction and question comments in some way upon the evidence. *Perez v. Weingarten Realty Inv.,* 881 S.W.2d 490, 498 (Tex.App.—San Antonio 1994, no writ) (concurring opinion). Indeed, to the extent that the court even submits an instruction or issue, it impliedly tells the jury that evidence exists to support the proposition encompassed.

■ Moreover, submitting inferential rebuttals, such as unavoidable accident, is not tantamount to informing the jury that one party's evidence is more credible than the other's. It simply educates the jury on the applicable elements of law and assists it in understanding the respective contentions. *Id.* Thus, the trial court here acted properly.

### POINTS OF ERROR THREE
### AND FOUR

■ In their next two points, the Crawfords continue to attack the subject of proximate cause. Now they argue that no evidence supports, or that its great weight preponderates against, the jury's decision concerning proximate cause. The court disagrees and overrules both points.

First, whether the finding of no proximate cause was legally sufficient depends upon whether the record holds any evidence supporting it. Of note is the coincidence between the test applied in addressing legal sufficiency claims and that invoked in determining the propriety of submitting a jury instruction. *See Wisenbarger v. Gonzales Warm Springs Rehab. Hosp.,* 789 S.W.2d at 692 (holding that when reviewing whether an instruction should have been submitted we need only review the legal sufficiency of the evidence). Recognizing this and having already upheld the submission of the unavoidable accident instruction in the first place, the court necessarily rejects the Appellant's point of legal insufficiency.

■ Second, in reviewing whether the finding is against the great weight and preponderance of the evidence, the court examines the entire record. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied). In doing so, it decides if the finding is clearly wrong or manifestly unjust. *Hydrocarbon Management, Inc. v. Tracker Exploration, Inc.,* 861 S.W.2d 427, 432 (Tex.App.—Amarillo 1993, no writ). Yet, deference to the fact finder's exclusive obligation to assess witness credibility and assign weight to his testimony must be made, for the court may not reverse simply because it disagrees with the finding. *City of Houston v. Harris County Outdoor Adv. Ass'n,* 879 S.W.2d 322, 327 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

As described above, the Crawfords' experts, Doctors Ratinov and Fagan, described Hope's conduct which they deemed negligent. Both concluded that his negligence caused the August 4th seizure. Moreover, when asked about the theory of hyponatremia propounded by Smith and Hope, both of Appellants' medical experts belittled it. Wanda's recorded sodium levels never fell to the level causing seizure, that is, 115, they again opined. Additionally, the swelling of Wanda's brain was localized around the area of her hematoma. Yet, according to Ratinov, had she suffered the illness their opponents proposed, the swelling would have been generalized. Additionally, in their view the cause of the diarrhea could even be traced to Hope's prescription of Zarontin.

Nevertheless, on cross-examination, Ratinov admitted that his review of the file was limited to the documents which the Crawfords' attorney sent. He further stated that he had not known that the American Medical Association guide for medication failed to note diarrhea as a side-effect of Zarontin. He also admitted to 1) receiving a letter from his client's attorney allegedly suggesting the medical opinion the attorney believed Ratinov would adopt, 2) relying on comments from Mr. Crawford suggesting that his wife lost bladder control, a malady which Wanda

herself later contradicted, 3) relying on evidence of vomiting that Mr. Crawford could not later recall, and 4) being unaware of the fact that Wanda suffered from a speech impediment before August 4th (an impediment that he attributed to the seizure and subsequent fall).

Also, Hope presented evidence potentially discrediting Ratinov's belief that the hematoma, which appeared on the left side of Wanda's brain, impaired the motor functions of the appendages appearing on her left side. Medical science, according to Hope, indicated that the brain injury should have affected, if anything, the appendages located on her right. The Appellee further presented evidence, in response to Ratinov's comments about the de minimis drop in sodium level, that the 121 was the lowest level *recorded*, but not necessarily the lowest experienced.

Dr. Fagan also underwent heated examination. Though believing Hope negligent, he nevertheless hedged some of his medical opinions. For instance, he was not "a hundred percent clear" about the type of seizures Wanda suffered. When pressed, he later revised his opinion that they were not grand or petit mal seizures as he first opined, but "complex partial" as suggested by Smith. Similarly, he stated that the August 4th seizure was "possibl[y] ... partially due ... to an abrupt removal of the medication." When asked if Zarotin played "any role" in his client's ailment, he answered "its possible."

More importantly, Fagan testified that though there was "nothing diagnostic," he could not exclude the possibility that a virus, as proposed by Hope, was involved. Fagan also admits that he 1) erred in his opinion that the barbiturates remedied all of Wanda's seizures, 2) was unaware of his opponent's medical resource disclosing that a sodium drop to 125 sufficed to induce seizures, 3) was unaware of the speed in which the blood sodium dropped, 4) was unaware of pre-existing evidence of deafness and "dizzy spells," which conditions he attributed to the August 4th seizure and fall, and 5) never examined Wanda. Further, in answer to whether he

knew "what the cause [was] of any problems that [Wanda] may or may not have now," Fagan said: "[n]o, and I never—never said that I did."

If nothing else, the record illustrates a mash of medical testimony, some contradictory and some not. It reveals a battle ground of competing medical ideas and opinions, none of which were beyond reproach. Though Hope's opinions were founded upon inference so too were the Crawfords since both had to surmise from the records. Additionally, none of the experts left the witness stand unscathed. It may well be that someone would think Crawfords' evidence the more weighty. But, someone else could equally and properly deem Hope's the more credible. Whether to believe someone who had examined Wanda over 190 times like Hope or someone who relied exclusively on medical records like Fagan was the province of the jury, and this court dares not invade that province.

In sum, neither side's testimony "overwhelmed" the other's. See *Niswanger v. State*, 875 S.W.2d 796, 799 (Tex.App.—Waco 1994, no writ) (holding that reversal occurs when the fact finding is "overwhelmed by the opponent's contrary proof"). The jury having waded through the morass of evidence and made its decision, it cannot be said that its decision was either manifestly unjust or clearly wrong. Consequently, points of error three and four are overruled.

## POINTS OF ERROR FIVE AND SIX

By their fifth and sixth points, the Crawfords remonstrate against the denial of damages. Given the court's determination with regard to points one through four, it must overrule points five and six as moot. See *Sinko v. City of San Antonio*, 702 S.W.2d 201, 208 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) (holding that the failure of the jury to find for the plaintiff on liability moots the issue of damages). Accordingly, the Crawfords' fifth and sixth points of error are overruled.

## POINT OF ERROR SEVEN

In their final point of error, the Crawfords complain that the trial court

abused its discretion in limiting the scope of Dr. Smith's expert testimony. They had wanted to call him as an "adverse" expert. Yet, the trial court prevented them from doing so because they failed to timely supplement their interrogatory answers and designate him as an expert. Nevertheless, after Hope, who had timely designated him as an expert, completed his examination of the doctor, the Crawfords were granted free access to Smith. Yet, they claim error.

Parties have an obligation to supplement their designation of expert witnesses "as soon as is practical, but in no event less than thirty ... days prior to the beginning of trial, except on leave of court." *Tex.R.Civ. Proc.* 166b(6)(b). The Appellants did not comply with this deadline. Thus, the trial court was authorized to deny them opportunity to call Smith as an adverse expert.

■ Assuming that the court did err, the Crawfords, nevertheless, remained bound to demonstrate that the evidence they desired was controlling on a material issue and not cumulative. *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex.1994); *see Williams Distributing Co. v. Franklin,* 884 S.W.2d 503, 510 (Tex. App.—Dallas 1994, no writ) (holding that the complaint must demonstrate that the whole case turned on the excluded evidence). This neither did they do. First, the trial court allowed them to freely cross-examine the doctor; what, if any, evidence they were denied opportunity to present goes unmentioned. Second, any hindrance arising from the inability to have their own experts hear Smith's comments and reply thereto could have been easily obviated; the Appellants need only have had their experts read Smith's deposition or sit in court while he testified. Lastly, the record discloses that Smith's report was apparently read by Crawfords' experts since they commented on it from the witness stand. Under these circumstances, the trial court's decision did not "probably" cause the rendition of an improper verdict. *See Tex.R.App.Proc.* 81(b)(1) (stating the test for reversible error). Consequently, this last point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.