NO. 07-04-0419-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 3, 2006



______________________________




STEVEN L. BORGERS, APPELLANT



v.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2004-405065; HON. CECIL G. PURYEAR, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, S.J. (1)

MEMORANDUM OPINION


 In this appeal, appellant Steven L. Borgers challenges his conviction of aggravated
robbery and the ensuing jury-assessed punishment of 60 years confinement in the
Institutional Division of the Department of Criminal Justice and, in addition, a fine of
$10,000. In presenting his appeal, in one point, he contends the evidence is factually
insufficient to support the jury's verdict. Disagreeing with that contention, we affirm the
judgment of the trial court.

 The nature of appellant's challenge makes it necessary for us to recount pertinent
testimony. On February 2, 2004, the Denny's restaurant located on Avenue Q in Lubbock
was robbed at about 5:00 p.m. The manager of the restaurant, Danielle Walters, testified
that she was in a small room used by her as a place for changing receipts and counting
money. As she was about to lock the door to the room, she was surprised by a black male
who had a pantyhose over his head and was dressed in dark clothes with a blue jacket. 
She was seated in a rolling chair and, as the individual entered the room, he knocked her
out of the chair and pushed a gun into the side of her head. The intruder told her she was
being robbed, to get down, not say anything, not to look up at him and if she did look at
him, he would shoot her. He took money off the desk and told Walters that he knew there
was $800 in the safe and she should give him that money. 

 Walters averred that the robber's voice stood out for her and that "the characteristics
of the voice was [sic] the exact same as an employee that I had talked to just recently." 
She also averred that as she listened to the voice, "[t]here's only one name clicking through
my head, and it was the name of the employee." She identified that employee as
appellant. She also said that the store had a videotape surveillance system that "monitors
pretty much our office door" in addition to other portions of the business. The man told her,
"I want the videotape," and she gave it to him. She was then pushed under the desk, and
the man attempted his get-away. He was unable to leave through the back door, so he
had to leave through the restaurant.

 Rick Rose, another Denny's employee, was eating as a customer at the restaurant
at the time of the robbery. While he was in the restroom at Denny's, he saw appellant. 
Although it took him a minute to recognize him, he knew appellant because he had trained
on the morning shift that appellant had worked. Rose asked appellant what he was doing,
to which appellant replied that he was just there to use the bathroom. Rose noticed that
appellant had on a blue jacket and appeared to have a black bag clutched to his chest. 
Shortly afterwards, Rose saw appellant leave the restaurant, he opined, "a little faster than
normal."

 Next, Rose saw Walters come from the back of the building. She was excited and
told him that she had been robbed and, she said, "I know the voice." They locked the
doors to the restaurant and notified the police. Rose then looked into each of the rooms
of the restaurant and discovered rolls of coins on the floor of the restroom. He averred he
had not seen any African-Americans in the restaurant other then appellant. He was shown
a photo-lineup at the police station and identified appellant as the individual he had seen
in the restroom and at the restaurant.

 Appellant's witness Angela Terrell testified that appellant was staying with her at her
apartment. She said that appellant had come by her workplace to pick her up about 4:30
p.m. on the day of the robbery but left because she had to work until 5:30 p.m. He was not
there to pick her up at 5:30 p.m. but was at her apartment about 5:45 when she returned
after getting a ride from a co-worker. Her apartment was searched by the police, but
nothing incriminating was found. Tasha Terrill, appellant's niece, furnished alibi testimony
by averring that appellant was at Angela Terrell's apartment and left a little after 4:00 p.m. 
She said that appellant returned a little after 4:00 p.m. and left the apartment a little after
5:00 p.m.

 It has long been the rule that a criminal appellant may challenge the sufficiency of
the State's evidence even though the issue was not raised in the trial court. Givens v.
State, 26 S.W.3d 739, 740-741 (Tex. App.-Austin 2000, pet. ref'd). In a factual sufficiency
review, all of the evidence is considered equally, including the testimony of defense
witnesses and the existence of alternative hypotheses. Id. at 741-42. A factual sufficiency
review asks whether a neutral review of the evidence, both for and against the finding of
guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by
contrary proof as to undermine confidence in the jury's verdict. See Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). In performing that function, we must remember that
we are not free to reweigh the evidence and set aside a verdict merely because we feel
that a different result is more reasonable. See Clewis v. State, 922 S.W.2d 126, 135 (Tex.
Crim. App. 1996). 

 The gist of appellant's challenge is Walters' identification of appellant as the culprit
simply by her familiarity with his voice. However, her trial testimony was clear, definite, and
unimpeached on cross-examination that she was able to recognize appellant's voice
because she had heard it before during the course of appellant's employment at the
restaurant. Her outcry and identification were immediate. The Court of Criminal Appeals
has held that voice identification testimony is admissible and it is within the jury's province
to determine the weight to be given the testimony. See McInturf v. State, 544 S.W.2d 417,
418-19 (Tex. Crim. App. 1976). There is also testimony that appellant was at the scene
of the crime at the time it was committed by a person who was familiar with him. Although
it is true that there was alibi testimony, the evidence adduced was amply sufficient to be
within the jury's exclusive province to resolve any factual differences and to determine the
credibility of the testimony.

 In summary, we hold the evidence was legally and factually sufficient to sustain the
jury verdict. Accordingly, appellant's point of alleged error must be, and is hereby,
overruled. The judgment of the trial court is affirmed. 


 John T. Boyd

 Senior Justice

Do not publish.

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005). 



press
a devil's advocate type position . . . because somebody will take that out of context and
can be devastating to you," he opined.

 Additionally, two witnesses described an instance wherein James sought to use his
position as a trustee to further his son's interests. The incident involved James' attempt
to induce them, through the use of a "[k]ind of threatening tone," into approving
scholarships to a set of young applicants. The latter apparently were children of an
individual who had a job for James' son. According to one trustee, James told them that
the father of the applicants had "'a very good job that [James' son could] have if the . . .
[particular applicants] get these scholarships.'" His son's "'whole future depended on
getting this job.'" And, though the trustees did not vote on the applications, James' conduct
grew more "intolerable" thereafter, so testified a trustee. 

 In another instance, trustees described how James made statements in an affidavit
they believed to be false in effort to secure a restraining order against them. The order
was needed to prevent a sale of trust property with which James disagreed. 

 Several other witnesses described how James used profanity and intimidation
during the meetings. So too did he threaten his fellow trustees with suit if they did not
agree with him. He would become "hostile" and "rude" when the trustees "don't do what
he wants to do right then . . . if we disagree[d]." When asked if she felt threatened by him,
a trustee replied: "[h]e scares me . . . [h]e just gets so upset, and so violent . . . and it just
gets worse and worse." Another testified that James' conduct caused him to leave a
trustee meeting. The environment was not one "in which trustees can work," he opined. 
It gave him "a stomach ache every time [he went] to a meeting." And, that the environment
was not conducive to the performance of trust duties was confirmed by another trustee
when she told the trial court that the meetings were "not a very pleasant experience" and
that it was not possible to conduct trust business under the circumstances. 

 The foregoing litany of testimony provides some probative evidence upon which a
trial court could reasonably conclude not only that James caused hostility and friction
within the board meetings but also that his conduct affected or impeded the operation of
the Trust. Admittedly, James attempted to justify his conduct at trial. Yet, his credibility,
like that of the other witnesses, was something the trial court, as factfinder, was entitled
to assess. (2) And, that there may have been other evidence suggesting that his actions
were legitimately motivated does not alone entitle us to hold the trial court's decision to
remove him as an instance of abused discretion. This is so because discretion is not
abused where the trial court bases its decisions on conflicting evidence. Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978). So, as long as the ruling comported with guiding
principles and enjoyed the support of some probative evidence, we cannot change it. That
is the case here; so, we overrule James' first issue.

 Our having upheld the trial court's decision to remove James as trustee leaves no
one else to complain of its judgment. He can no longer do so given that he now is neither
a trustee nor beneficiary of the Trust. See Lemke v. Lemke, 929 S.W.2d 662, 664 (Tex.
App.--Fort Worth 1996, writ denied). And, while other trustees were also removed, none
of them appealed. Nor has any beneficiary of the trust perfected an appeal. 
Consequently, the remaining issues presented by James are moot.

 We affirm the judgment of the trial court.


 Brian Quinn

 Justice
1. Given that the decision must be affirmed if it comports with the law and enjoys the support of some
evidence, no longer are claims of legal and factual insufficiency independent grounds of error. In re C.R.O.,
96 S.W.3d 442, 447 (Tex. App.--Amarillo 2002, no pet.); Crawford v. Hope, 898 S.W.2d 937, 940 (Tex. App.--Amarillo 1995, writ denied). Instead, dispute about the quantum of evidence supporting a particular decision
is subsumed into the test of abused discretion. Crawford v. Hope, 898 S.W.2d at 940 -41. 
2. We recognize that the office of trustee carries with it fiduciary duties. So too do we understand that
trustees are entitled to opinions independent from the other trustees and must voice them when they believe
something is wrong. Yet, that does not entitle the dissenting individual to become so hostile or violent that
the effective operation of the trust is impeded. Persistence and persuasion are the characteristics to be
invoked to correct perceived error. Litigation may also be an alternative. But, violence, hostility, profanity,
or intimidation are not, especially when they impede trust purposes.