

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00316-CV

IN THE INTEREST OF R.A.W., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 80,800-E, Honorable Douglas Woodburn, Presiding

March 27, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, the mother of R.A.W., appeals the trial court's order in a suit to modify the parent-child relationship. She presents six issues. We will affirm the trial court's order.

Background

R.A.W., male, was born in October 2006. The child's mother and father never married. Under a November 2011 order, the parents were joint managing conservators. The father had the exclusive right to determine the child's residence "for the purpose of

determining school districts," but limited to Potter and Randall Counties. The mother and father each had possession of the child, during alternating weeks.

In late 2012, the father filed a petition to modify the parent-child relationship. The petition requested that "he be appointed as the person who has the right to designate the primary residency of the child." He further requested that the mother's access to or possession of the child be modified to reflect the Standard Possession Order set out in the Texas Family Code. The father also asked that the mother be required to pay child support. The pleading made no mention of a geographic restriction. The petition alleged the circumstances of the child, a conservator or other affected party had materially and substantially changed, and asserted the requested modifications were in the child's best interests, but did not further elaborate on either contention. The mother filed a counter-petition, also alleging a material and substantial change had occurred, and asking the court to give her the right to designate the child's primary residence. Her counter-petition did not mention a geographic restriction on the child's residence.

After hearing a number of witnesses, including both parents, the trial court modified the mother's possession to that provided by the Standard Possession Order, giving her possession on the second, fourth and alternate fifth weekends of each month to coincide with her possession of her other two children. The court appointed the father as the parent having the right to establish the primary residence of R.A.W. in Potter, Randall, Swisher, Hale or Lubbock Counties. The court also made additional related orders and subsequently entered findings of fact and conclusions of law. After the mother's motion for new trial was overruled by operation of law, she timely filed notice appealing the trial court's order.

2

Analysis

An appellate court reviews a trial court's order regarding child custody, control, possession, and visitation for an abuse of discretion. *In re L.C.L.,* 396 S.W.3d 712, 716 (Tex. App.—Dallas 2013, no pet.) (*citing In re H.N.T.,* 367 S.W.3d 901, 903 (Tex. App—Dallas 2012, no pet.) and *Jacobs v. Dobrei,* 991 S.W.2d 462, 463 (Tex. App—Dallas 1999, no pet.)). A trial court abuses its discretion when it acts arbitrarily and unreasonably without reference to guiding principles. *Id. (citing In re H.N.T.,* 367 S.W.3d at 903 and *In re W.C.B,* 337 S.W.3d 510, 513 (Tex. App—Dallas 2011, no pet.)). In family law cases, the abuse of discretion standard of review overlaps with traditional standards of review. *L.C.L.,* 396 S.W.3d at 716; *see Crawford v. Hope,* 898 S.W.2d 937, 940 (Tex. App.—Amarillo 1995, writ denied); *In re Ferguson,* 927 S.W.2d 766, 769 (Tex. App.—Texarkana 1996, no writ). As a result, legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to an appellate court's assessment of whether the trial court abused its discretion. *L.C.L.,* 396 S.W.3d at 716; *Crawford,* 898 S.W.2d at 940. To determine whether the trial court abused its discretion, an appellate court considers whether the trial court had sufficient evidence on which to exercise its discretion and erred in its exercise of that discretion. As long as some evidence of a substantive and probative character exists to support the trial court's judgment, an appellate court will not substitute its judgment for that of the trial court. *L.C.L.,* 396 S.W.3d at 716.

The burden of proof by the movant in a suit to modify the parent-child relationship is by a preponderance of the evidence. TEX. FAM. CODE ANN. § 105.005 (West 2013). The best interests of the child is the primary consideration in determining

conservatorship or residency of a minor child. TEX. FAM. CODE ANN. §§ 153.001, 153.002 (West 2014); *In re V.L.K.,* 24 S.W.3d 338, 342 (Tex. 2000); *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). One attempting to modify an order establishing conservatorship, possession, and access to a child must show that (1) there has been a material and substantial change in the circumstances since the rendition of the existing order or the signing of a mediated or collaborative settlement agreement on which the order is based, and (2) the modification would be in the best interests of the child. TEX. FAM. CODE ANN. § 156.101(a) (West 2014).

In the mother's second, third and fourth appellate issues, she challenges the trial court's modifications, asserting the court abused its discretion because there was no evidence to support the ordered modifications. Because the best interests of R.A.W. are the primary consideration here, we will address whether the record contains some evidence to find the trial court's modification orders were in the child's best interests.

Before addressing best interests, we note the mother's brief asserts at one point that no material and substantial change had occurred to warrant modification of the 2011 order. The allegations in the mother's counter-petition for modification preclude such a contention. As noted, the mother also plead a material and substantial change in the circumstances of the child, a conservator or other affected party had occurred since the rendition of the 2011 order. The mother thus judicially admitted that essential element of the father's case for modification. *See In the Interest of A.E.A.,* 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.); *In re L.C.L.,* 396 S.W.3d at 718-19 (both cases finding judicial admissions from pleadings in modification proceedings).

4

Our inquiry, then, is whether the record contains some substantive and probative evidence the modification order was in R.A.W.'s best interests. Trial courts have wide latitude to determine what is in a minor child's best interests. *In the Interest of O.G.,* No. 05-13-1263-CV, 2014 Tex. App. LEXIS 7021, at *10 (Tex. App.—Dallas June 26, 2014, no pet.) (mem. op.) (*citing Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). In a bench trial, the trial judge is in the best position to observe and assess the witnesses' demeanor and credibility. *In re A.L.E.,* 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We therefore defer to the trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute our judgment for that of the trial court. *Id.*

We note first that there was testimony the father took the more active role in his son's life, in some significant respects. The father testified he made all of R.A.W.'s medical, dental, therapy and counseling appointments[1] and paid for and took the child to each. The record shows the mother's unwillingness to take R.A.W. to his speech therapy appointments because she did not believe he needed the therapy. Also, the mother claimed the appointments were scheduled on the days she worked and she was unable to change them without consulting with the father, something the trial court could have determined she was unwilling to do. The record shows the mother attended only one counseling session with R.A.W. because, she told the court, she was not aware of the other appointments. The father testified, and the child's teacher, therapist and counselor all agreed, that the father had the greater contact and involvement with them

---

[1] The father testified that by the time of this hearing, R.A.W. had started kindergarten and had a slight learning delay requiring speech therapy and counseling. The court heard testimony from which it could have determined the therapy and counseling were in the child's best interests.

regarding R.A.W. And, the mother acknowledged R.A.W. was often absent or tardy from school while in her care. The child's counselor testified she was concerned that the child's needs were not being met when he was with the mother, thought those needs were met when with the father, but opined continued contact with both parents is best for R.A.W.

Second, the father told the court he was married, and his wife had been accepted into a doctoral program at Texas Tech University in Lubbock, requiring commuting. He told the court allowing R.A.W. to move with him to Lubbock would allow more family time and opportunities such as travel.[2] The testimony indicates also the father had a recent change in employment, benefitting R.A.W. in several ways: "[n]ot monetarily, although, that is there, but also the family environment of the work schedule, which allows me to come and go and leave early and take care of my family, as well as conduct my business."

Third, although the testimony was disputed, the trial court could have accepted the father's testimony expressing concerns over the care R.A.W. received while with his mother. He testified about R.A.W.'s cleanliness and the state of his clothing, although the boy's teacher testified she never observed anything negative about R.A.W.'s appearance. Also, the record shows the mother moved in with one man, then another man, after the entry of the 2011 order and the mother's other two children do not live

---

[2] The father told the court about a Disney cruise he wanted to take with R.A.W. and the father's brother's family. That vacation involved traveling to a Disney island and required a passport. The father asked the mother to sign the documents to obtain a passport for R.A.W. He testified, "[a]nd she would lead me on, saying, yeah, next month I'll sign the paper, next week, call me next week, let me know. And she just never would sign it, so we couldn't go." The mother testified she did not want R.A.W. traveling with the father and his wife because she was concerned that the wife had hit R.A.W. The court's order directed that the father and the mother sign documents relating to a passport and gave the father the right to seek a passport for R.A.W.

with her. The father testified R.A.W. told him his "mother will curse at him, say the F word." The father also stated concerns over the mother's smoking, choice in movies while R.A.W. was present, and the lack of a bed for R.A.W. at his mother's home. But the mother did tell the court she has been employed since 2011, had the same cell phone number since 2007 and provided that number to the father. And, the mother pointed to her concerns for R.A.W. while with his father, in particular the father's conviction for disorderly conduct,[3] and asserts this evidence shows modification of the order is not in R.A.W.'s best interests. She further agreed it would be disruptive to R.A.W. to live in Lubbock with his father.

Having reviewed the record of trial, we find the trial court heard evidence of a substantive and probative character supporting its conclusion it was in R.A.W.'s best interests for the father and the mother to maintain their status as joint managing conservators but for the father to have the right to name the primary residence of the child, with the geographical restriction the court imposed. We resolve appellant's second, third and fourth issues against her.

We turn now to consideration of the mother's remaining appellate issues. In her first issue, the mother contends the trial court erred in allowing the father to raise issues he did not include in his petition. Specifically, she argues she did not receive fair notice[4]

---

[3] Evidence was presented to show the father had been arrested for a family violence criminal offense and had plead guilty to disorderly conduct. When asked by counsel, the father explained that the mother often called the police to have "welfare checks" conducted on R.A.W. while in the father's care. At one point after the two stopped dating, the mother alleged there had been "a physical altercation" between them. The father denied the altercation but he plead to the Class C misdemeanor offense and paid a fine. He testified he did so "to have closure to the incident and . . . move on."

[4] Rule 45(b) of the Texas Rules of Civil Procedure provides that pleadings shall "consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of

7

that he would be seeking to modify the geographical restriction in the 2011 order or that he would be seeking permission to obtain a passport for R.A.W.

At the outset of the hearing, the father's counsel made a brief opening statement advising the court that the father was asking "that he be allowed to move at least to Lubbock and we're asking that he be allowed to apply for a passport and take the child without express permission." In her opening statement, counsel for the mother stated:

> Today is the first that we've heard that there is a request to lift the geographical restriction that was in place. That's not contained in the Petition to Modify that was originally filed by the Petitioner.
>
> In addition, any requests regarding the passport provisions today was the first we heard of that. That's not contained in the Petition to Modify.
>
> So we would ask that those issues not be allowed to have testimony presented on those. If Counsel wants a continuance to amend her petition, we can do that, but we weren't prepared for those two issues today. We were just specifically prepared to argue regarding who should be named the primary, Your Honor.
>
> The court responded, "All right. You may proceed."

The parties proceeded with the hearing, and the mother made no further objection or other reference to her request that testimony be limited to particular issues, either during the presentation of evidence or at the time the court announced its ruling.

The father contends the mother's first issue presents nothing for our review. Under Rule 33.1(a)(2) of the Texas Rules of Appellate Procedure, in order to present a

_____
defense." Tᴇx. R. Cɪᴠ. P. 45(b). Rule 47(a) provides that a pleading setting forth a claim for relief shall contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." Tᴇx. R. Cɪᴠ. P. 47(a). A petition provides sufficient notice if it gives the defendant fair notice of the facts relied upon, enabling the defendant to prepare a defense. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex. 2000); *see also Coffey v. Johnson,* 142 S.W.3d 414, 417 (Tex. App.—Eastland 2004, no pet.) (the test for fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him, can determine the nature of the controversy and the testimony that would probably be relevant).

8

complaint for appellate review, the record must reflect that the trial court "(A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule … and the complaining party objected to the refusal." *See* TEX. R. APP. P. 33.1(a)(2). The trial court proceeded with the hearing without ruling expressly on the mother's request to exclude any testimony on the topics of the geographical restriction and the passport. It might be argued the court implicitly denied her request by telling the parties to proceed, but we could not agree with such a contention. We find *In re Z.L.T.* instructive in that regard. That case involved a suit brought by the State to establish a parent-child relationship. 124 S.W.3d 163 (Tex. 2003). The respondent, an inmate, filed an application for a bench warrant. *Id.* at 164. On appeal, the court held the trial court implicitly denied his application by proceeding to trial without issuing the bench warrant, preserving for appeal his complaint about its denial. *Id.* at 165. By contrast, here, proceeding with the hearing was not contrary to the mother's request for a limit on testimony. She expressed no objection to trying the issue she said she was prepared for, that regarding which of the parents should be named "the primary." The mother did not obtain a ruling on her request, precluding our consideration of her complaint on appeal. *See O'Dell v. Wright*, 320 S.W.3d 505, 513 (Tex. App.—Fort Worth 2010, pet. denied) (finding no implicit ruling on admission of testimony).

The mother's complaint on appeal also contends the trial court's ruling did not allow her the opportunity to present evidence to counter the father's case. Her brief argues at one point, "In order to defend against [the father's] case, [the mother] needed to present evidence demonstrating that the move of R.A.W. was not in R.A.W.'s best interest. By not being given fair notice of [the father's] request to move R.A.W. outside

9

of the previously imposed geographical location, [the mother] was denied a fair opportunity to defend against such a request." To any degree the mother's request to the trial court might be read as seeking an opportunity to present evidence on another occasion, the trial court made no ruling on such a request.

Moreover, at the conclusion of the hearing, the court stated, "I am not happy that there was no pleading with regard to the Lubbock change, however, the Code charges me with the duty to see to the child's best interest, and it is my finding that the child's best interest will be served by allowing the parties to remain together in Lubbock, so I will allow the possession -- I mean, the geographic restriction to Amarillo or Lubbock or any county in between." It is unclear to us that the court's statement should be taken as an adverse ruling on the mother's objection raised at the outset of the hearing. Even if we consider it as such a ruling, preserving the mother's first issue for review, we could not agree the trial court abused its discretion by hearing and ruling on the issues.

The father and mother filed pleadings seeking modification of the 2011 order, and in particular seeking modification with respect to the right to establish the child's primary residence. The jurisdiction of the court was properly invoked with respect to the custody and control of R.A.W., a minor child, so the trial court was "vest[ed] with decretal powers in all relevant custody, control, possession and visitation matters involving the child." *Kohutek v. Kohutek,* No. 07-10-0143-CV, 2011 Tex. App. LEXIS 7585, at *12-13 (Tex. App.—Amarillo Sept. 16, 2011, no pet.) (mem. op.) (*citing Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.)). And, although Rule 301 of the Texas Rules of Civil Procedure generally requires a judgment to conform to the pleadings, the Texas Supreme Court has long held that in cases

10

affecting the parent-child relationship, "[t]echnical rules of practice and pleadings are of little importance in determining issues concerning the custody of children." *Kohutek,* 2011 Tex. App. LEXIS 7585, at *13 (*citing Leithold v. Plass,* 413 S.W.2d 698, 701 (Tex. 1967)). Moreover, once the court's jurisdiction is invoked, the court has "the duty . . . to make proper disposition of all matters comprehended thereby in a manner supported by the evidence." *Liethold,* 413 S.W.2d at 701. The best interests of the child is always the primary consideration of the court in determining the issues of conservatorship and frequently "trumps procedural concerns." *Dorai v. Dorai,* No. 01-12-00308-CV, 2013 Tex. App. LEXIS 4812, at *9-10, (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (mem. op.).

Because courts are given such wide discretion in this context, we find the trial court's admission and consideration of evidence pertaining to the topics of the geographical restriction and the passport were well within the trial court's discretion. *Liethold,* 413 S.W.2d at 701; *Kohutek,* 2011 Tex. App. LEXIS 7587, at *13; *Ellason,* 162 S.W.3d at 887.

The mother's first issue is overruled.

Citing section 156.103 of the Texas Family Code, the mother argues in her fifth appellate issue the trial court abused its discretion by ordering the parties to meet in Plainview, Texas to exchange possession of R.A.W. She argues the court failed to account for the costs she would incur making trips to-and-from Plainview two to three weekends per month and failed to recognize it was the father's obligation, as the party making the move to Lubbock, to bear the increased expenses to provide the mother

access to R.A.W.  The mother also argues the trial court did not take into account safety concerns of the parties meeting alone in Plainview given that the father had been arrested for domestic violence.

Section 156.103 provides:

a)      If a change of residence results in increased expenses for a party having possession of or access to a child, the court may render appropriate orders to allocate those increased expenses on a fair and equitable basis, taking into account the cause of the increased expenses and the best interest of the child.

(b)      The payment of increased expenses by the party whose residence is changed is rebuttably presumed to be in the best interest of the child.

(c)      The court may render an order without regard to whether another change in the terms and conditions for the possession of or access to the child is made.

TEX. FAM. CODE ANN. § 156.103 (West 2014).

The trial court made the finding that "[i]t is in the child's best interest for Petitioner and Respondent to meet half way between the residences of the parties due to Petitioner's change of residence."  In making her argument under this issue, the mother does not challenge any specific fact finding of the trial court.  Unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding.  *In the Interest of H.N.T.,* 367 S.W.3d at 902.  The court's finding is binding on us here, and we see no abuse of discretion in the trial court's selection of Plainview as the specific place for the exchange of possession.  Nor can we see an abuse of discretion in the court's allocation of the travel expenses, effectively requiring each party to bear his or her own expenses of travel

back and forth to Plainview.  In other findings of fact unchallenged on appeal, the court determined the mother's and father's net resources were substantially the same.

As to the mother's expressed concerns over her safety during exchanges of possession, we note the court's order requires each parent to surrender the child to the other at a public place, the McDonald's in Plainview.  The court heard testimony regarding the circumstances surrounding the father's plea of guilty to a Class C misdemeanor based on the mother's complaint, and could reasonably have determined its order adequately addressed the mother's perceived safety concerns.  We overrule the mother's fifth issue.

In the mother's last issue, she contends, without analysis, the trial court erred by ordering her to pay $300 per month in child support because no evidence was presented on that issue.  The determination of the amount of child support to be paid is left to the discretion of the trial court and will not be disturbed on appeal absent a clear showing of abuse of discretion.  *In the Interest of L.R.P.,* 98 S.W.3d 312, 313 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (internal citations omitted).

The trial court entered a conclusion of law stating, "[the mother] should pay child support in the amount of $300.00 per month."  The trial court also entered the following findings of fact:

6.    The application of the percentage guidelines in this case would be unjust or inappropriate.

7.    The net resources of [the mother] per month are $1717.19.

8.    The net resources of [the father] per month are $1738.00.

13

9.    The percentage applied to the first $7500 of [the mother's] net resources for child support is 16.00 percent.

10.    The specific reasons that the amount of support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of section 154.129 of the Texas Family Code are: the child has increased needs due to the necessity for speech therapy and counseling.

The trial court's findings show the mother's net monthly resources to be $1717.19, sixteen percent of which is $274.75. In her motion for new trial, the mother set forth as grounds: "[t]he evidence does not support a finding that [the mother's] child support obligation should be $300 per month." On appeal, the mother's entire argument on this point states, "There was absolutely no evidence adduced on the issue of child support. Therefore, the trial court's ruling regarding child support was legally and factually insufficient and was not in the best interest of R.A.W."

In light of the trial record, we do not read the mother's appellate brief to challenge the trial court's determination of her monthly net resources. We construe the mother's point on appeal to challenge the evidence supporting the award of child support greater than the sixteen percent statutory guideline, that is, the $25.25 difference between the $300 awarded and the $274.75 guideline figure. The trial court cited the child's need for counseling and speech therapy as the basis for the additional support. At trial and on appeal the mother disputes the child's need for such services. Because we have already determined the trial court could have believed the testimony that R.A.W. needed those services, we find no abuse of discretion in the court's reliance on that need in setting child support, and overrule the mother's final issue on appeal.

## Conclusion

Having resolved each of the mother's issues against her, we affirm the trial court's order modifying the parent-child relationship.


James T. Campbell
Justice